## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CONNECTION CHURCH, INC.** § | | |
| PLAINTIFF, § | | |
| § | | |
| § | | |
| **v.** § | CIVIL NO. | CIV-24-408-G |
| § | | |
| § | | |
| § | | |
| **CHURCH MUTUAL INSURANCE** § | | |
| **COMPANY, S.I.** § | | |
| DEFENDANT, § | | |

## COMPLAINT

COMES NOW, Plaintiff, Connection Church, Inc. ("Connection Church" or "Plaintiff"), by and through the undersigned counsel and brings this Petition for Declaratory Judgment and Breach of Contract against Church Mutual Insurance Company, S.I. ("Church Mutual" or "Defendant"). In support of its Petition, Plaintiff states and allege as follows:

### I.   PARTIES

1. Plaintiff is a Oklahoma not for profit corporation whose principal place of business is in Texas County, Oklahoma. Plaintiff is a citizen of Oklahoma.

2. Defendant is a foreign insurance company organized under the laws of Wisconsin, with a principal place of business in Merrill, Wisconsin. Defendant is a citizen of Wisconsin.

3. On information and belief, Defendant may be served with service of process at the following address:

1

>Church Mutual Insurance Company, S.I.
>3000 Schuster Lane
>Merrill, WI 54452

## II.  JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Defendant because Church Mutual has availed itself to the jurisdiction of this Court by regularly and systematically selling insurance policies in the state of Oklahoma to Oklahoma consumers.

5. The Court has subject matter jurisdiction over each of the parties and claims set forth in this Complaint pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Venue is proper under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events giving rise to the claims asserted occurred within Oklahoma.

## III.  STATEMENT OF FACTS

7. This is a first-party insurance case stemming from extensive damage to Plaintiff's property caused by wind, water, and hail damage.

8. Plaintiff seeks damages for breach of contract and breach of the covenant of good faith and fair dealing. Plaintiff also seeks its attorney's fees, costs of court and pre- and post-judgment interest.

9. Plaintiff is the owner of real property located at 1901 N. Leila St., Guymon, Oklahoma 79342 (the "Property"). At all relevant times, Church Mutual issued a policy # 0136183-25-217625 (the "Policy") to Plaintiff as the named insured. The Policy covered Plaintiff's real property against loss by wind, hail and storm damage among other perils. Defendant provided

coverage to the Plaintiff for the subject property under the insurance policy described above. The coverage period of the aforementioned insurance policy was from May 2, 2021 to May 2, 2022.

10. As a consequence of a storm on or about April 22, 2022, the Property was damaged by a hail/wind storm. The damage is covered by the Policy.

11. Plaintiff gave timely notice of its loss to Defendant and made a claim for benefits under the Policy for damage from the loss (the "Claim"). Plaintiff has performed all conditions precedent to its recovery under the Policy. Plaintiff paid all the premiums under the Policy and cooperated with Defendant's investigation of the Claim.

12. Defendant assigned the Claim to adjusters to investigate, report on and adjust the Claim.

13. The roofing systems at the Property consist of varying types of building components and material to include metal, composite asphalt shingles, concrete tiles, TPO membrane, and modified bitumen.

14. The damage to Plaintiff's property was open and obvious and would have been uncovered with an adequate and reasonable investigation.

15. Plaintiff provided information to Defendant's adjusters as well as opportunities for the adjusters to inspect the Property. However, Defendant and its adjusters failed to conduct a full and fair and reasonable investigation of Plaintiff's Claim, including as to the full scope and extent of covered losses and damages of Plaintiff's insured Property and as to the reasonable and necessary scopes of repairs.

16. After Plaintiff's timely notice of its Claim, the Defendant assigned the Claim to adjusters to investigate, report on, and adjust the Claim. Plaintiff provided information to

Defendant and its adjuster, Ty Horton, and gave opportunities for Defendant to inspect the Property. Rather than conducting a complete, full and fair investigation, Defendant conducted a results-oriented investigation designed to undervalue the Claim, and further violated the terms of the insurance policy by failing to pay for all of the covered damaged caused by the storm.

17. Horton did not perform an adequate investigation and used the following tactics to pressure Plaintiff into accepting an unfair and inadequate payment for the covered damages.

18. Less than a month after Plaintiff provided notice to Defendant of its Claim, and in furtherance of its pre-textual investigation, Defendant retained engineering services from ProNet Group ("ProNet"), to rubber stamp their predetermined coverage decision and basis for underpaying Plaintiff's Claim and convince Plaintiff that the outstanding damage was not functional and only cosmetically damaged, conveniently, and therefore not covered by the Policy. Defendant knew its hired engineers would provide reports based on inadequate information, which Defendant could use as a pretext for underpaying Plaintiff's Claim, and knew that the substandard investigations its hired representatives at ProNet would perform and *did* perform were not reasonable. By way of example, the biased investigation conducted by ProNet was limited to visual observations only of the property damage to the metal roof, without obtaining any microscopic analysis onsite and/or chemical testing of Plaintiff's metal roof and without obtaining any samples of Plaintiff's metal roof for laboratory microscopic analysis and/or other laboratory testing.

19. Defendant's representatives with ProNet did this inadequate assessment despite plainly visible and extensive damage to the property even after identifying hailstorm impacts to the various roof structures, including, but not limited to, the metal roof thereby undervaluing the Claim and drastically reducing Defendant's exposure under the policy and further violating the

4

terms of the Policy by failing to pay for all of the covered damage by the hail/windstorm event at issue.

20.     ProNet concluded its investigation on or about July 8, 2022, and determined that there was no functional hail damage to a substantial portion of Plaintiff's roofing system to include the following roofing systems: concrete roof tiles, metal roof, and modified bitumen. ProNet provided limited self-serving explanations behind its cosmetic damage conclusions and ProNet failed to provide any information/data to Plaintiff regarding its conclusion as it relates to Plaintiff's modified bitumen roof. Defendant issued payment for other covered portions of the roofs such as the asphalt shingles and TPO membrane, however they limited their payments in accordance with the conclusions from the inadequate investigation done by ProNet.

21.     Defendant concluded its investigation on or about September 22, 2022, adjusted Plaintiff's Claim, and determined Plaintiff was owed $299,553.31 for covered damages.

22.     By underpaying Plaintiff's Claim, Defendant forced Plaintiff to hire a public adjuster to assist them with the Claim made the basis of this lawsuit. Plaintiff's public adjuster submitted information and documents regarding the claimed damages including a proof of loss, photographs, weather data and a supporting estimate for the reasonable and necessary scope and cost of repairs..

23.     In response to the Claim package submitted by Plaintiff's public adjuster, Horton simply relied on the previous engineer report and did not conduct a reinspection of Plaintiff's property. Instead, the Plaintiff's public adjuster was told that the estimate included amounts that were excluded under the Policy and Horton directed the public adjuster to the Defendant's engineering report.

24. At all relevant times, Plaintiff submitted the necessary documentation and recovered their depreciation. On or about June 10, 2023, Defendant issued a depreciation payment for $25,393.46.

25. Afterwards, Plaintiff's public adjuster followed up with Defendant regarding the outstanding damages and submitted a supplemental estimate. On or about November 3, 2023, Horton revised the submitted estimate and sent it back to Plaintiff's public adjuster. The Defendant increased its original estimate of damages constituting covered losses to the structure to almost half of Church Mutual's original estimate.

26. That same day, on or about November 3, 2023, more than a year after Defendant's original payment, Defendant issued a supplemental payment totaling $139,993.38 for additional covered damages, further evidencing Defendant's incorrect original claim determination and payment decision in September 2022.

27. To date, Defendant still has not conducted a re-inspection of the subject property since ProNet originally conducted their inspection, nor has Defendant requested the same.

28. Defendant wholly failed to estimate the complete cost of repair to the Property during the claims handling period. Defendant has underpaid Plaintiff by approximately $116,037.40 for covered damages to the tile, metal and modified bitumen roofs.

29. Defendant has failed to make an attempt to settle Plaintiff's Claim in a fair manner, although its liability to Plaintiff under the Policy is without dispute.

30. Defendant has failed and refused to pay Plaintiff in accordance with its promises under the Policy and has wrongfully underpaid Plaintiff's Claim for covered damages to the Property.

31. The amount of Plaintiff's damages is well established and has been provided to Defendant. Plaintiff's covered property damage has not been paid despite Plaintiff having performed all conditions precedent to recovery under the Policy.

32. Defendant forced Plaintiff to file this suit by offering substantially less than the amount of covered damages. Thus, Defendant failed to meet its obligation under the Policy regarding investigation and payment of the Claim without delay.

## IV.   CAUSES OF ACTION AGAINST CHURCH MUTUAL INSURANCE COMPANY, S.I.

### FIRST CAUSE ACTION - BREACH OF CONTRACT

33. Plaintiff incorporates all of the above allegations in tis Petition as if fully set forth herein.

34. The insurance policy between Plaintiff and Defendant is a binding contract.

35. Pursuant to the terms of the insurance policy, Defendant must pay for all damages covered by the policy.

36. Plaintiff paid all premiums and otherwise performed all conditions precedent to recovery of benefits under the policy.

37. Defendant has failed to pay Plaintiff for all damages from the weather event covered by the policy.

38. The Policy between Plaintiff and Defendant is a binding contract. Under said Policy, and the laws of the State of Oklahoma, Defendant had a duty to timely, fairly and thoroughly investigate the subject Claim.

39. Under the Policy, and the laws of the State of Oklahoma, Defendant had a duty to timely pay the subject Claim.

40. By failing to pay Plaintiff for all damages sustained from the weather event which are covered by the policy, Defendant has breached the policy.

41. As a direct, immediate, and proximate result of the breach of contract by Defendant, the Plaintiff has been damaged in an amount in excess of $75,000.00. Accordingly, Plaintiff brings an action for breach of contract against Defendant, and seeks all of its damages for such breach, including actual damages, consequential damages, attorneys' fees, prejudgment interest, other litigation expenses and costs of court.

## SECOND CAUSE OF ACTION – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

42. Plaintiff incorporates all of the above allegations in tis Petition as if fully set forth herein.

43. Every contract contains an implied covenant of good faith and fair dealing.

44. Defendant breached the covenant of good faith and faith dealing in the following ways, including, but not limited to:

   a. Failing to properly investigate Plaintiff's claims or to obtain the proper additional information necessary to fully evaluate Plaintiff's claims;

   b. Withholding payment of Plaintiff's claims, despite knowing that Plaintiff's claims, or a portion of them, were valid;

   c. Refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the insurance policy and/or Oklahoma law;

   d. Failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims under the policy, including Plaintiff's claim;

    e. Forcing Plaintiff to retain counsel in order to secure benefits Defendant knew were payable;

    f. Hiring biased experts in an attempt to deny coverage; and

    g. Other acts that may be supported by the facts herein and as may be discovered through the course of this litigation.

45. As a direct, immediate, and proximate result of Defendant's breaches of the covenant of good faith and fair dealing, Plaintiff has suffered injuries, damages, and losses in an amount to be proven at trial.

46. Defendant's above-described wrongful acts and omissions were made with reckless disregard for Plaintiff's rights, and/or were done intentionally and/or with malice, and therefore Plaintiff is entitled to recover punitive damages.

## V. ATTORNEYS' FEES

47. Plaintiff retained the law firm of Pearson Legal, P.C., for the purposes of making demand and prosecuting this breach of contract action, through trial, and appeal if necessary, and is responsible for payment of all related services, costs and expenses. Plaintiff, therefore, seeks recovery from Defendant of all reasonable and necessary attorneys' fees, costs, and expenses allowable by law, including but not limited to 36 O.S. § 3629, or in equity.

## V. CONDITIONS PRECEDENT

48. All conditions precedent for Plaintiff to recover has been or will be met.

## VI. JURY DEMAND

49. Plaintiff requests that a jury be convened to try the factual issues in these causes of action and tenders or will tender the appropriate fees.

9

## VII. RESERVATION OF RIGHTS

50. Plaintiff specifically reserves the right to bring additional causes of action against Defendant and to amend this complaint as necessary.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court award judgment in its favor and against Defendant as follows:

a) Plaintiff's actual and consequential damages;

b) Pre- and post-judgment interest;

c) Plaintiff's costs and attorneys' fees, as allowed by contract or law; and

d) All such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: /s Matthew R. Pearson
Matthew R. Pearson (Atty. Reg. #34236)
**Pearson Legal, P.C.**
425 Soledad, Suite 600
San Antonio, Texas 78205
Telephone: (210) 732-7766
Facsimile: (210) 229-9277
Email: mpearson@pearsonlegalpc.com
*Attorney for Plaintiff*

**JURY TRIAL DEMANDED**